UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAWN RUNDGREN, | ) | |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| -against- | ) | |
| | ) | |
| CONCERTO RENAL SERVICES LLC, | ) | |
| | ) | |
| Defendant. | ) | Jury Trial Demanded |
| | ) | |

Plaintiff, by his attorney, David Porter, Esq., complaining of the Defendant, alleges as follows:

## JURISDICTION AND VENUE

1. This is a civil action seeking monetary damages and affirmative relief based upon the following:

    a. Defendant's violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq. (the "ADA"), as amended by the ADA Amendments Act of 2008 (the "ADA-AA"), for the Defendant having discriminated against and harassed Plaintiff in connection with the terms and conditions of Plaintiff's employment and the Defendant's termination of Plaintiff's employment, due to her disabilities, her record of impairments, and her having been regarded as having impairments;

    b. Defendant's violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq. (the "ADA"), as amended by the ADA Amendments Act of 2008 (the "ADA-AA"), for the Defendant having retaliated against Plaintiff in connection with the terms and conditions of Plaintiff's employment and the Defendant's termination of Plaintiff's employment, for her having asserted her rights under the ADA; and

    c. Defendant's violation of the ADA, for the Defendant's failure and refusal to afford Plaintiff reasonable accommodation.

2. Jurisdiction of this Court over this controversy is invoked under 28 U.S.C. Section 1331 (federal question) and 28 U.S.C. Sections 1343 (3) and (4) (civil rights).

3. Venue is proper pursuant to 28 U.S.C. Section 1391.

4. All conditions precedent to commencing this action have been satisfied in that: a. Plaintiff has filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about October 11, 2016 (440-2017-00154); b. the EEOC has issued a Right-to-Sue Letter dated November 20, 2017; and c. Plaintiff brings this action no later than ninety (90) days of her receipt of the aforesaid Right-to-Sue Letter.

## PARTIES

5. Plaintiff, at all times hereinafter mentioned was and still is a resident and domiciliary of the County of DuPage, State of Illinois, specifically residing at 18W085 Williamsburg Lane, Villa Park, Illinois 60181. At all times relevant Plaintiff was a "qualified employee" as defined by 42 U.S.C. §12111(8) of the ADA.

6. Defendant Concerto Renal Services LLC is a domestic corporation authorized to do business in the state of Illinois, and is engaged in an industry affecting commerce. Defendant has employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year. Defendant is an "employer" as required by the ADA-AA. Defendant's principal place of business is located in the County of Cook, State of Illinois, at 7373 N. Lincoln Avenue, Suite 100, Lincolnwood, Illinois 60712.

**BACKGROUND**

7. Plaintiff was employed by Concerto Renal Services LLC ("Concerto") for 8-½ months, from August 24, 2015 to May 16, 2016, when her employment was terminated. At the time Plaintiff's employment was terminated she held the position of Crown Web Specialist.

8. At all relevant times herein Plaintiff has had several serious health conditions that constitute disabilities under the Americans with Disabilities Act. In this regard, inter alia: on Dec. 8, 2015 Plaintiff suffered a stroke, and was hospitalized for this from Dec. 10-12, 2015; Plaintiff also during her employment later found out that she suffers from Epstein Barr virus ("Epstein Barr"), Cytomegalovirus ("CMV"), and Chronic Fatigue Syndrome.

9. These aforesaid health conditions led to Plaintiff going out on Short-Term Disability ("STD") as well as her making requests for reasonable accommodation during her employment - which requests Concerto repeatedly delayed responding to - as well as refused - with Concerto holding those requests, as well as Plaintiff's health conditions/ disabilities, against Plaintiff during her employment and in the termination of her employment (and with Concerto terminating Plaintiff's employment while she was out on STD).

10. Plaintiff's aforesaid serious health conditions are potentially life-threatening, and have caused her much pain and distress. Among other symptoms, on a repeated basis these health conditions (stroke, Epstein Barr, CMV, and Chronic Fatigue Syndrome) have caused Plaintiff to have severe fatigue, as well as recurring fevers, chills, body aches, coughs, dizziness, and stomach pain, and great difficulty staying awake including also while driving.

11. On repeated occasions during Plaintiff's employment she notified Defendant Concerto of her health situation (with her continually updating Concerto of her health condition, as well as when she would suffer flare-ups of these health conditions).

12. During Plaintiff's employment with Defendant she requested the following reasonable accommodations:

    a. to work from home;

    b. to work from home between doctor's appointments;

    c. to work occasional half-day schedules, or merely take sick days; and

    d. to take a day off after surgery (when Plaintiff was not supposed to drive).

13. While Concerto did permit Plaintiff to work from home for a period of time, that ended in March, 2016. Commencing in March, 2016 and going forward Concerto no longer permitted this - which was to Plaintiff's great detriment. More specifically, on separate and repeated occasions in March, 2016 Jill Anderson (Plaintiff's supervisor), Janice Meintzer (H.R. Manager), and Shimon Meysel (CEO) all told Plaintiff that Plaintiff could no longer work from home.

14. By contrast to how Plaintiff was treated, similarly situated employees (including but not necessarily limited to admissions employees) who did not have disabilities were freely allowed to work from home.

15. Concerto also repeatedly interfered in Plaintiff merely attempting to take a sick day. In this regard, on repeated occasions when Plaintiff would try to take a sick day off from work (as a result of her being ill, and for her health, and to try to rest and recuperate), employees of Concerto would call Plaintiff several times a day, and if Plaintiff would not pick up the phone then Concerto's employees would keep sending Plaintiff texts and e-mails, with Concerto's employees also being repeatedly hostile to Plaintiff in this regard - thereby preventing Plaintiff from resting and recuperating.

16. As a result of Concerto denying Plaintiff's requests for reasonable accommodation - particularly her requests of working from home - this caused Plaintiff much burden both with regard to Plaintiff's health and financially. For a period of time Plaintiff drove to and from Concerto's offices (which was extremely difficult for Plaintiff due to her health conditions/disabilities), and Plaintiff worked at Concerto's offices rather than at home. But ultimately, as this commute and refusal by Concerto to permit Plaintiff to work from home caused her health to deteriorate, Plaintiff was caused to again go out on disability - with her going out on disability on or about April 25, 2016, and continuing to be out on disability through to the end of her employment approximately three (3) weeks later.

17. Had Concerto granted, and not interfered with, Plaintiff's requests for reasonable accommodation Plaintiff would have been able to work from home and would not have had to go out on STD in April, 2016.

18. Plaintiff was a good hard worker, who took pride in her work, and who had good to excellent work performance during her employment. Some examples of this are the following:

   a. Plaintiff raised Concerto's data acceptance rate with CMS from approximately 50% (at the beginning of her employment) up to approximately 100%;

   b. Plaintiff spent countless hours correcting data and completing missing data, as well as keeping up with current data input;

   c. Plaintiff promptly responded to requests by Concerto's employees for information/assistance; and

   d. Plaintiff was never issued any disciplines during her employment.

19. Notwithstanding Plaintiff's good to excellent work performance, Concerto repeatedly treated Plaintiff in a hostile and adverse manner in connection with her health conditions. Some examples of this include, but are not limited to, the following:

a. Concerto repeatedly refused Plaintiff's requests for reasonable accommodation;

b. Concerto repeatedly interfered with Plaintiff's attempts to take sick days and to rest/ recuperate;

c. Concerto's employees repeatedly were hostile to Plaintiff, such as: isolating Plaintiff and ignoring Plaintiff the vast majority of the work day when Plaintiff was at work; accusing Plaintiff of being drunk or on illegal drugs; giving Plaintiff the cold shoulder; certain employee would not even have the courtesy of saying good morning to Plaintiff, but they would regularly greet Plaintiff's co-workers; omitting needed information to Plaintiff when she was being trained; making hostile and petty/inappropriate comments to Plaintiff; and

d. Ultimately terminating Plaintiff's employment due to her disabilities/ health conditions while Plaintiff was out on STD (and shortly before Plaintiff was scheduled to return from being out on STD for approximately 3 weeks), and giving a false/ pretextual reason for why Concerto terminated Plaintiff's employment.

20. On May 16, 2016 - while Plaintiff was out on STD - Concerto (by and through Shimon Meysel and Janice Meintzer) called Plaintiff and advised that they had restructured Concerto and eliminated Plaintiff's position.

21. At the time of termination (May 16, 2016) Concerto had been of the belief that Plaintiff was to return from STD the next day, May 17, 2016.

22. Ten days later (May 26, 2016) by express mail (Fed Ex. Tracking 7763 7676 8583) Plaintiff received a back-dated letter from Concerto, dated May 18, 2016, claiming that Plaintiff's employment had been terminated on May 17, 2016.

23. Concerto's claim that it had eliminated Plaintiff's position was false. In this regard, within in or about two weeks of the termination of Plaintiff's employment Concerto hired another individual (a Ms. Kenya Varnad) to replace Plaintiff's employment.

6

24. The ADA-AA applies to this claim because the adverse conduct by Concerto against Plaintiff took place after 2008. Moreover, under that law the disabilities must be assessed in their active state, not in remission, and without regards to mitigating measures such as medical treatments and medicines.

25. The ADA-AA protects employees from discrimination based on their disabilities, their record of impairment, and their being regarded as having an impairment. A major part of the purpose of the ADA-AA is to prevent employers from taking adverse actions based on unfound stereotypes and assumptions about individuals with disabilities.

26. As a result of the foregoing harassment/ discrimination/ retaliation, Plaintiff was caused much stress and distress, which <u>inter</u> <u>alia</u> correspondingly further exacerbated Plaintiff's disabilities/ health conditions.

27. It should be noted that Plaintiff made extensive efforts to have Plaintiff's disabilities/ serious health conditions not interfere with Plaintiff's employment.

28. Concerto, during Plaintiff's employment, was well-aware of Plaintiff's disabilities, and that Plaintiff then had a substantial limitation of a major life activity/activities, and was well-aware of Plaintiff's health conditions.

29. In contrast to how Concerto treated Plaintiff, there were numerous similarly situated employees (who did not have disabilities, nor a record of such impairment nor were regarded as having an impairment) who Concerto chose not to eliminate their positions, replace, or terminate.

30. During Plaintiff's employment - as well as in Concerto's decision to terminate Plaintiff's employment - Concerto repeatedly held against Plaintiff her aforesaid disabilities, and her record of such impairments, as well as her being regarded as having such impairments.

31. But for Concerto's discrimination/ retaliation against Plaintiff Concerto would not have terminated Plaintiff's employment.

32. Concerto terminated Plaintiff's employment under circumstances where similarly situated individuals (who did not have disabilities, nor a record of impairment, nor were regarded as having an impairment) did not have their employment terminated.

33. The conduct of Defendant Concerto Renal Services LLC toward Plaintiff was intended to and did constitute discrimination, harassment, and retaliation. Rather than being understanding and working with Plaintiff, Concerto instead chose to take actions toward, and did, terminate Plaintiff's employment. To have treated such a hardworking and productive employee (who has suffered from disabilities) in such an adverse and hostile manner sends a terrible message as to the type of renal services company that Defendant Concerto is in the Chicagoland area.

34. Based on the foregoing, and more, Plaintiff charges Defendant Concerto Renal Services LLC with unlawful discriminatory and retaliatory practices, relating to Plaintiff's employment and the terms and conditions of her employment, because of her disabilities (actual, record of, and regarded as having an impairment).

## AS AND FOR A FIRST CAUSE OF ACTION

(ADA-AA - Discrimination)

35. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if more fully set forth hereat.

36. Plaintiff had and has disabilities as defined by the ADA-AA, to wit, inter alia: on Dec. 8, 2015 Plaintiff suffered a stroke, and was hospitalized for this from Dec. 10-12, 2015; Plaintiff also during her employment later found out that she suffers from Epstein Barr virus ("Epstein Barr"), Cytomegalovirus ("CMV"), and Chronic Fatigue Syndrome.

37. Plaintiff's history of such health conditions, and more, constitutes a "record of disability" as defined by the ADA-AA.

38. Defendant "regarded" Plaintiff as having a disability.

39. Defendant Concerto has intentionally subjected Plaintiff to unequal and discriminatory treatment, and discriminated against Plaintiff, based upon her disabilities, in the terms and conditions of her employment and in the termination of her employment in connection with: a) the Defendant's disparate and adverse actions and steps intentionally taken against Plaintiff - but not similarly taken against similarly situated employees who did not similarly have a disability - toward attempting to ultimately cause the end of Plaintiff's employment (through either resignation or termination) and toward pretextually justifying the Defendant's discriminatory termination of Plaintiff's employment (including, but not limited to: disregarding Plaintiff's progressive discipline policy and practice to go straight to termination without any disciplinary warnings while Plaintiff was out on STD and scheduled to soon return to work; making Plaintiff's work conditions more difficult than that of similarly situated employees who did not similarly have a disability; blaming Plaintiff for things that were not Plaintiff's fault and for the failure of others, while not blaming similarly situated employees who did not similarly have a disability or similarly holding them accountable for their failures; exaggerating and distorting incidents and non-incidents to use against Plaintiff; writing false and extremely misleading documents; being hostile towards Plaintiff; additional items mentioned in paragraphs 13-16, 19-23 and 29-32; and more); and b) in connection with the Defendant's selection of Plaintiff for termination and the Defendant's termination of Plaintiff's employment; all in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq., as amended by the ADA Amendments Act of 2008.

40. By reason of the Defendant's discrimination against Plaintiff, Plaintiff has suffered a loss of earnings and benefits, in addition to suffering great pain and mental anguish, all to her damage.

41. Further, said actions on the part of the Defendant were done intentionally, willfully, and with malice and reckless disregard for Plaintiff's protected rights, giving rise to punitive damages.

## AS AND FOR A SECOND CAUSE OF ACTION

(ADA-AA - Harassment)

42. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if more fully set forth hereat.

43. Defendant Concerto has intentionally harassed Plaintiff due to her having disabilities, her record of impairments, and her being regarded as having impairments, in the terms and conditions of her employment, in the termination of her employment, and otherwise, all in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq., as amended by the ADA Amendments Act of 2008.

44. By reason of the Defendant's harassment of Plaintiff, Plaintiff has suffered a loss of earnings and benefits, in addition to suffering great pain and mental anguish, all to her damage.

45. Further, said actions on the part of the Defendant were done intentionally, willfully, and with malice and reckless disregard for Plaintiff's protected rights, giving rise to punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION

(ADA-AA  -  Defendant's failure and refusal to
afford Plaintiff reasonable accommodation)

46. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if more fully set forth hereat.

47. Plaintiff, at all times relevant herein, was a qualified individual with a disability, as that term is defined and intended by the ADA. Plaintiff had and has physical impairments that substantially limit one or more of her major life activities. Moreover, she has a record of such physical impairment, and during her employment was regarded as having such impairment.

48. By the above-described acts, and others, upon information and belief Defendant Concerto repeatedly failed and refused to afford Plaintiff reasonable accommodation, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., as amended by the ADA Amendments Act of 2008.

49. By reason of Defendant's failure and refusal to afford Plaintiff reasonable accommodation, Plaintiff has suffered a loss of earnings and benefits, in addition to suffering great pain and mental anguish, all to her damage.

50. Further, said actions on the part of the Defendant were done with malice and reckless disregard for Plaintiff's protected rights, giving rise to punitive damages.

## **AS AND FOR A FOURTH CAUSE OF ACTION**

(ADA-AA - Retaliation)

51. Plaintiff repeats and realleges each and every allegation set forth above with the same force and effect as if more fully set forth hereat.

52. Defendant Concerto has intentionally retaliated against Plaintiff in the terms and conditions of her employment, in the termination of her employment, and otherwise, due to her having asserted her rights under the ADA, all in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq., as amended by the ADA Amendments Act of 2008.

53. By reason of the Defendant's retaliation against Plaintiff, Plaintiff has suffered a loss of earnings and benefits, in addition to suffering great pain and mental anguish, all to her damage.

54. Further, said actions on the part of the Defendant were done intentionally, willfully, and with malice and reckless disregard for Plaintiff's protected rights, giving rise to punitive damages.

WHEREFORE, Plaintiff demands that:

a. Plaintiff's employment with Defendant Concerto be reinstated;

b. An Order be entered declaring that the acts and practices of Defendant as described herein constitute a violation of the ADA-AA;

c. Plaintiff's employment record with Defendant be purged of any and all adverse documents which were placed in her file due to violations of the ADA-AA;

d. Defendant be permanently enjoined from interfering with/ retaliating against Plaintiff on any basis forbidden by the ADA-AA;

e. Defendant be Ordered to compensate, reimburse and make whole the Plaintiff for all the income and benefits Plaintiff would have received had it not been for the Defendant's illegal actions, including, but not limited to backpay, frontpay, and benefits;

    f.   Defendant be Ordered to compensate, reimburse and make whole the Plaintiff for Plaintiff's compensatory damages in the sum of Three Hundred Thousand ($300,000.00) Dollars, or in such other maximum amount as is permitted under the law;

    g.   Defendant be Ordered to pay Plaintiff punitive damages in the sum of Three Hundred Thousand ($300,000.00) Dollars, or in such other maximum amount to deter the Defendant from a repetition of such conduct as is permitted under the law;

    h.   Defendant be Ordered to pay Plaintiff prejudgment interest;

    i.   Defendant be Ordered to pay the costs and disbursements of this action, including reasonable attorney fees pursuant to the ADA/ ADA-AA; and

    j.   for such other and further relief as may be just and proper.

Plaintiff demands a jury trial on the matters complained of herein.

Dated: February 14, 2018

                                                         Respectfully submitted,

                                                         By: /s/ David Porter
                                                             David Porter

DAVID PORTER, ESQ.
Attorney for Plaintiff
33 N. LaSalle Street
Suite 2000
Chicago, Illinois 60602
(312) 236-1207